**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RASZELL REEDER,

                          Plaintiff,

                                                    9:16-CV-1161
          v.                                        (MAD/DJS)

DONALD UHLER, *et al.*,

                          Defendants.


**APPEARANCES:**                    **OF COUNSEL:**

RASZELL REEDER
94-A-6388
Plaintiff, *Pro Se*
Upstate Correctional Facility
P.O. Box 2001
309 Bare Hill Road
Malone, NY 12953

HON. LETITIA JAMES                  WILLIAM A. SCOTT, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

### I. INTRODUCTION

On September 23, 2016, *pro se* Plaintiff Raszell Reeder commenced this action

pursuant to 42 U.S.C. § 1983, asserting claims arising from his confinement at Upstate

Correctional Facility ("Upstate").  Dkt. No. 1, Compl.  Following initial review of the

Complaint and after receiving leave from the Court, Plaintiff filed an Amended Complaint on May 21, 2018.  Dkt. No. 65, Am. Compl.  Plaintiff's Amended Complaint contains the following seven causes of action brought under 42 U.S.C. § 1983:

1.    An Eighth Amendment excessive force/failure to intervene claim arising out of an incident that occurred at Upstate on October 31, 2015.

2.    An Eighth Amendment excessive force/failure to intervene claim arising out of an incident at Upstate which occurred on November 2, 2015.

3.    A Fourteenth Amendment due process claim against the hearing officer who conducted the disciplinary hearing which was held as a result of the November 2, 2015 incident.

4.    An Eighth Amendment conditions of confinement claim arising out of alleged denial of meals.

5.    An Eighth Amendment conditions of confinement claim arising out of alleged denial of recreation for a period of three years.

6.    A supervisory liability claim against the Superintendent of the Clinton Correctional Facility, Defendant Uhler.

7.    An Eighth Amendment deliberate medical indifference claim against Dr. Kumar, for his alleged failure to treat Plaintiff for herpes and thyroid cancer.

Am. Compl. at pp. 3-20.[1]

---

[1] Citations to Plaintiff's submissions throughout this opinion are to page numbers generated by the Court's CM/ECF system.

Presently before this Court is Defendants' Motion for Summary Judgment. Defendants contend that Plaintiff failed to exhaust his administrative remedies as to his excessive force claims, his procedural due process claim, and his conditions of confinement claim premised upon his failure to receive meals; that summary judgment is warranted on all of Plaintiff's conditions of confinement claims; that Plaintiff's Eighth Amendment deliberate indifference claim against Defendant Dr. Kumar fails as a matter of law; that all of Plaintiff's claims alleging supervisory liability are unsupported; that the Hearing Officer provided Plaintiff with all required due process during the disciplinary hearing; and that the failure to intervene claims against Defendants Drumm, Smith, and Bishop should be dismissed for lack of personal involvement.   Dkt. No. 124, Defs.' Mot. Summ. J.; Dkt. No. 124-1, Defs.' Mem. of Law.   Plaintiff opposes Defendants' Motion for Summary Judgment, Dkt. No. 129, Pl.'s Resp., and Defendants have replied, Dkt. No. 132, Defs.' Reply.   The Court finds that Plaintiff: (1) failed to exhaust his administrative remedies as to certain claims; (2) failed to show there is a material question of fact as to whether Dr. Kumar was deliberately indifferent to his serious medical needs; and (3) failed to establish that any Defendant was personally involved in the alleged deprivation of recreation.

## II. BACKGROUND

### A. Plaintiff's Failure to File a Response to Defendants' Rule 7.1 Statement

Pursuant to this District's Local Rules, "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." N.D.N.Y.L.R. 7.1(a)(3).  As required by the Local

Rules, Defendants' counsel advised Plaintiff of the consequences of failing to file a response to Defendants' Rule 7.1 Statement of Material Facts. Dkt. No. 124 at p. 4. Plaintiff, however, did not file a response to Defendants' Statement of Material Facts. *See* Pl.'s Resp. "Although a *pro se* litigant is entitled to a liberal construction of his filings, *see Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013), his *pro se* status does not relieve him of his obligation to comply with the relevant procedural rules." *Marino v. Watts*, 2018 WL 3121612, at *1 (N.D.N.Y. Mar. 7, 2018), *report and recommendation adopted sub nom. Marino v. Schult*, 2018 WL 1578163 (N.D.N.Y. Mar. 30, 2018), *aff'd*, 764 Fed. Appx. 73 (2d Cir. 2019). The Court therefore will deem the facts as set forth in Defendants' Statement of Material Facts admitted, to the extent they are properly supported by the record. Dkt. No. 124-4, Defs.' Rule 7.1 Statement of Material Facts ("Defs.' SMF").

## B.  Factual Background

Plaintiff alleges that while housed at Upstate on October 31, 2005, he was the victim of an assault by DOCCS staff at the direction of Lt. Salls. Am. Compl. at p. 3. Plaintiff alleges that Corrections Officer Donah, who was not in proper formation, twisted his fingers with excessive force causing pain "for 50 seconds," and that C.O. Drumm and Lt. Salls were present but did not intervene to prevent the conduct. *Id.* Defendants Salls, Drumm and Donah have denied the allegations. *See* Dkt. No. 85, Defs.' Answer to Am. Compl.; Dkt. No. 124-5, Drumm Decl., pp. 2-3; Dkt. No. 124-12, Donah Decl., pp. 2-3. The particular facts underlying these allegations are not relevant to the Motion and, therefore, are not discussed in detail. What is significant, however, is that there is no

record of a timely grievance being filed with respect to this incident. *See* Defs.' SMF at ¶¶ 251-256; Dkt. No. 124-28, Seguin Decl., ¶¶ 17-23; Dkt. No. 124-29, Debyah Decl., ¶¶ 13-21.

Next, Plaintiff alleges that he was again the subject of excessive force after his transport to cell 11-A-17 on November 2, 2015.  Am. Compl. at pp. 4, 6, & 9.  Plaintiff maintains that he was assaulted by a number of Defendants.  *Id.*  Other Defendants are alleged to have failed to intervene and put an end to this infliction of cruel and unusual punishment.  *Id.*  Defendants, for their part, maintain that Plaintiff failed to comply with orders, bit one officer and kicked another's face shield, and that any force used upon him was necessary to maintain order and control over Plaintiff.  *See* Dkt. No. 124-6, Fletcher Decl., pp. 2-3.  Once again, the facility has no record of a timely grievance being filed by Plaintiff regarding this incident.  Defs.' SMF at p. 29; Seguin Decl. at pp. 5-6.

As a result of the November 2, 2015, incident Plaintiff was issued numerous inmate misbehavior reports, including for alleged violent conduct, assault on staff, interference with employee, refusing a direct order, and participation in an unhygienic act.  Dkt. No. 124-9, Zerniak Decl., ¶¶ 10-13.  Plaintiff alleges that he was denied his Fourteenth Amendment right to due process because he was denied a tier assistant, and his request to view footage from the video cameras that captured the use of force incident was also denied.  Am. Compl. at p. 6.  Plaintiff also claims that he was not permitted to attend or participate in the disciplinary hearing.  *Id.*  At the end of the hearing Plaintiff was found guilty, and sentenced to 730 days confinement in the special housing unit ("SHU").  Zerniak Decl. at ¶ 31.

Capt. Zerniak disputes the claim of any constitutional violation. *See generally* Zerniak Decl. As set forth in his Declaration, he maintains that Plaintiff was in fact given an opportunity for an employee assistant and was assigned the individual that he requested - Corrections Officer Debyah. *Id.* at ¶18-19. Plaintiff was provided a copy of the charges, and Plaintiff requested that the hearing officer review the unusual incident report and the video footage of the incident, and that he call a particular inmate to testify at the hearing. *Id.* at ¶ 20. Hearing Officer Zerniak further notes that Plaintiff refused to come out of his cell to participate in the hearing, and that he spoke with Plaintiff personally, who continued to refuse. *Id.* at ¶ 24. Thereafter the hearing was held, during which the Hearing Officer viewed the video requested by Plaintiff. *Id.* at ¶ 29. The Hearing Officer attempted to call the inmate witness that Plaintiff had requested, but the inmate refused to testify. *Id.* at ¶ 28.

Plaintiff was delivered the result of the disciplinary hearing and Plaintiff was advised that he had thirty days in which to file an appeal of the disposition through the DOCCS Commissioner's office. Defs.' SMF at ¶¶ 118 & 119; Zerniak Decl. at ¶¶ 33 & 34. At no time did Plaintiff file an administrative appeal of the tier hearing in question. Defs.' SMF at ¶ 257; Dkt. No. 124-30, Venettozzi Decl., ¶ 4.

Plaintiff has also alleged a violation of his Eighth Amendment rights upon the basis of the conditions of his confinement while housed in the special housing unit. One condition of confinement claim is premised upon the alleged denial of meals at Upstate. Am. Compl. at p. 11. The second conditions of confinement claim is based upon the amount of time he is forced to stay in his cell. While in the SHU, Plaintiff is generally

limited to one hour a day of recreation.  Plaintiff maintains that he was intentionally denied recreation in 2015 on September 30; October 1, 2, 3, 13, and 14; November 2, 12, 13, and 15; and December 7.  Am. Compl. at p. 11.  Plaintiff further alleges he was denied recreation in 2016 on the dates of January 8, 22, and 23; February 4 and 6; March 30 and 31; April 8, 9, and 10; and June 7, 18, and 20.  *Id.*

As for Plaintiff's Eighth Amendment deliberate indifference claim premised upon the failure of Dr. Kumar to provide appropriate medical care, Plaintiff generally alleges in his Amended Complaint that he has suffered due to a lack of medical treatment by Dr. Kumar for asymptomatic genital herpes and a thyroid disorder.  Am. Compl. at p. 8.  As noted in the original Complaint, which the District Court has incorporated into the Amended Complaint, Plaintiff complains that he was not given medication of sufficient strength, and even though he was vomiting, he was denied appropriate medical treatment. Dkt. No. 1 at pp. 6-7.

In connection with the Summary Judgment Motion on the issue of deliberate indifference, Defendants have submitted the Declaration of Dr. Vijay Kumar Mandalaywala ("Dr. Kumar").  Dkt. No. 124-10, Kumar Decl.  Dr. Kumar explained that his only involvement with Plaintiff's medical care was between December 2015 and June 2017.  Defs.' SMF at ¶ 52; Kumar Decl. at ¶ 14.  At that time Plaintiff was confined to the special housing unit because he had thrown feces and bodily fluids at staff members; therefore, Dr. Kumar's physical examinations and interviews of Plaintiff occurred after Dr. Kumar had put on a Tyvek protective suit.  *Id.* at ¶¶ 14-15.

Dr. Kumar first saw Plaintiff on December 22, 2015 and listened to his complaints of stomach pain and other maladies,[2] and then placed him on a trial treatment of medications, including Zantac for stomach complaints. *Id.* at ¶¶ 17-19. Dr. Kumar saw Plaintiff again on March 23, 2016, at which point the physical examination was normal and Plaintiff denied pain or discomfort. *Id.* at ¶¶ 21-22. A genitourinary ("GU") exam was performed, although Plaintiff refused the rectal portion of that examination. *Id.* at ¶ 22. During the March exam Dr. Kumar ordered lab tests including comprehensive panel, liver chemistry, lipid profile, hepatitis profile, thyroid panel, urinalysis with culture and sensitivity if indicated, and HIV testing. *Id.* at ¶ 23. Based upon the results of these examinations, Dr. Kumar concluded that Plaintiff did not have herpes, and there was no indication of any thyroid abnormality. *Id.* at ¶¶ 24-31. No medication was provided for herpes because there was no indication of the condition, and for the secondary reason that overmedication of the drug used to treat herpes can cause liver damage. *Id.* at ¶¶ 25-26. Plaintiff was informed of the results of his testing on April 6, 2015. *Id.* at ¶ 31.

On June 10, 2016, Plaintiff wrote a letter to Dr. Kumar questioning why he was prescribed Zantac; why no medication had been prescribed for his herpes condition; and why he did not receive treatment for his thyroid cancer. *Id.* at ¶ 32. Dr. Kumar saw Plaintiff on July 21, 2016 and explained the course of treatment. *Id.* at ¶ 34. An examination was also done at that time, during which Plaintiff's genitalia was determined to be normal, with no lesions, rash, or scarring. *Id.* Dr. Kumar next saw Plaintiff on

---

[2] According to Dr. Kumar, at no time during the December 22, 2015, examination did Plaintiff complain about herpes or any thyroid-related disorder. *Id*. at ¶ 20.

November 21, 2016 and performed an additional physical examination, and at that point changed one of his medications. *Id.* at ¶ 40. At this time Plaintiff refused a genitourinary and rectal examination, so Dr. Kumar was unable to provide treatment for his complaints of rectal discomfort and penis irritation. *Id.* at ¶ 41. Finally, Dr. Kumar saw Plaintiff on June 21 and 23, 2017 for a routine examination. *Id.* at ¶¶ 44-46.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary

judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read his supporting papers liberally, and [ ] interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. ANALYSIS

### A. Exhaustion of Administrative Remedies

Defendants seek summary judgment as to Plaintiff's claims regarding the denial of meals, excessive force, and procedural due process on the ground that Plaintiff failed to exhaust his available administrative remedies. Defs.' Mem. of Law at pp. 12-16. For

the reasons set forth herein, and for the further reasons detailed by Defendants in their submissions, it is recommended that all claims *with the exception of* Plaintiff's Eighth Amendment deliberate indifference to medical needs and the Eighth Amendment prison conditions claim predicated on the failure to provide recreation, be dismissed due to Plaintiff's failure to exhaust.

### 1. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

As noted in Defendants' papers, a different procedure is applicable to Plaintiff's claims arising out of the disciplinary hearing. As recently noted by Magistrate Judge Thérèse Dancks:

> "Generally, exhaustion of administrative remedies involves utilizing the facility's grievance process, however, when an inmate's federal claims arise directly out of a disciplinary or administrative segregation hearing or confinement, he exhausts his administrative remedies by presenting his objections in the administrative appeals process." *Harvey v. Harder*, 2012

WL 4093792, at *4 (N.D.N.Y. July 31, 2012) (citing *Sweet v. Wende Corr. Facility*, 514 F.Supp.2d 411, 413 (W.D.N.Y. 2007)), *report-recommendation adopted by*, 2012 WL 4093760; *see also Rosales v. Bennett*, 297 F.Supp.2d 637, 639 (W.D.N.Y. 2004) (discussing the difference between the grievance process and the administrative appeals process for disciplinary or administrative segregation appeals). Indeed, "an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable." N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 7, § 701.3(e)(2).

*Thomas v. Kinderman*, 2017 WL 8293605, at *3 (N.D.N.Y. Dec. 4, 2017), *report and recommendation adopted*, 2018 WL 1441336 (N.D.N.Y. Mar. 22, 2018).

Finally, Plaintiff has alleged claims premised upon the theory of supervisory liability against several of the Defendants. The issue therefore arises as to whether the exhaustion requirement applies to those supervisory claims. As noted in this Circuit, because inmates need not include in their grievances every theory upon which they later rely in a civil rights lawsuit, it is not necessary for a plaintiff to specifically identify a given supervisor in their grievance. *Shepherd v. Lempke*, 2016 WL 8732639, at *6 (N.D.N.Y. Oct. 28, 2016), *report and recommendation adopted in part, rejected in part*, 2017 WL 1187859 (N.D.N.Y. Mar. 30, 2017) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)) ("In determining whether exhaustion has been achieved, we have drawn an analogy between the contents of an administrative grievance and notice pleading, explaining that as in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming."). It does not follow, however, that the plaintiff may simply skip the grievance procedure altogether in his pursuit of a supervisory claim. In the same manner that the failure to state an underlying

constitutional violation forecloses supervisory liability, *Scott v. Koenigsmann*, 2014 WL 3956649, at *10 (N.D.N.Y. Aug. 13, 2014), it also follows that the failure of a plaintiff to properly exhaust his claim also precludes the assertion of claims against supervisors. Here, if the Court determines that the exhaustion requirement has not been met, all claims that relate to the unexhausted event will be recommended for dismissal, including supervisory claims.

## 2. *Whether Plaintiff Filed Grievances*

Defendants seek dismissal of Plaintiff's claims regarding the alleged denial of meals based on Plaintiff's failure to exhaust his administrative remedies. Defs.' Mem. of Law at pp. 12-14. Plaintiff objects to dismissal on this ground and contends that he did exhaust his remedies with respect to this claim. Pl.'s Resp. at pp. 17-18. Plaintiff specifically alleges that he was denied meals on November 7, 10, 14, 18, 22, 23, 27, and 29, 2015. Am. Compl. at p. 7. In opposing summary judgment Plaintiff makes reference to three different grievances filed at Upstate concerning meals, but none of them are sufficient to establish exhaustion under DOCCS' grievance procedure. Accordingly, Plaintiff did not exhaust this claim.

Two of the three grievances relied upon by Plaintiff predate November 2015 and so clearly cannot have exhausted the alleged denial of food that occurred after they were filed. Plaintiff first cites Grievance 55995-15, filed in April 2015. Pl.'s Resp. at p. 17. He also relies on Grievance 56204-15, filed in June 2015. *Id.*; *see also* Seguin Decl. at Ex. C. "The PLRA's exhaustion requirement is designed to 'afford [ ] corrections officials time and opportunity to address complaints internally before allowing the

initiation of a federal case.'" *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004) (quoting *Porter v. Nussle*, 534 U.S. at 524-25).  As such, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Id.*  Grievances filed in April and June 2015 clearly do not meet this basic requirement for conduct that is not alleged to have occurred until November 2015.  These grievances, therefore, were not sufficient to exhaust claims regarding the alleged denial of meals in November.

The third grievance Plaintiff cites also fails to satisfy the exhaustion requirement. That grievance, Grievance 58702-16, was not filed until July 2016.  Pl.'s Resp. at p. 18; Dkt. No. 129-2, Ex. C.  This grievance does not specifically reference denial of meals in November 2015, *see* Dkt. No. 129-2, Ex. C, but even if it did it would clearly have been untimely under DOCCS' grievance program and insufficient to exhaust.  Under DOCCS' inmate grievance program an inmate must submit a grievance "within 21 calendar days of the alleged occurrence."  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a); *see also Smith v. Dodge*, 2019 WL 2250552, at *4 (N.D.N.Y. May 24, 2019).  A grievance concededly not filed until July 2016 clearly did not timely exhaust the denial of meals that allegedly occurred in November 2015.  An untimely grievance does not satisfy the exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006); *Lee v. O'Harer*, 2014 WL 7343997, at *6 n.6 (N.D.N.Y. Dec. 23, 2014); *Conklin v. Bowen*, 2014 WL 4063294, at *3 (N.D.N.Y. Aug. 14, 2014).

None of the grievances relied upon by Plaintiff satisfy the exhaustion requirement as to his claims regarding the alleged denial of meals in November 2015.[3]

Plaintiff's two remaining excessive force claims involve incidents that occurred on October 31 and November 2, 2015. *See* Dkt. No. 64 at p. 15. As discussed above, any grievance regarding these alleged excessive force incidents should have been brought "within 21 calendar days of the alleged occurrence." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a); *Smith v. Dodge*, 2019 WL 2250552, at *4. The record presented on this Motion establishes that no grievance regarding these two incidents was filed within the applicable time. Seguin Decl. at ¶¶ 17-23; Debyah Decl. at ¶ 18. The record also establishes that between December 11, 2015 and February 2016, Plaintiff filed thirty-five individual grievances which were ultimately consolidated into a single grievance. Debyah Decl. at ¶ 18. None of the thirty-five consolidated grievances specifically grieved an alleged excessive use of force on either October 31 or November 2.[4] Seguin Decl. at ¶ 22. Nor, even if they had, were any of those grievances timely filed under the DOCCS grievance protocol. *Id.* at ¶ 23; Debyah Decl. at ¶ 18. Plaintiff therefore failed to exhaust these excessive force claims.

---

[3] Apart from specific November dates alleged in the Amended Complaint, Plaintiff does make reference elsewhere to two undated periods of twenty-one and twenty-seven days when he was denied meals. *See, e.g.*, Pl.'s Dep. at pp. 39-40. As to those alleged periods, Plaintiff testified at his deposition that the deprivations occurred in 2015. *Id.* at p. 41. He also testified that he did not know the names of the individuals who denied him meals. *Id.* at p. 40. Even were his allegations sufficient to raise a question about exhaustion, such a conclusory claim – regarding undated misconduct against unknown individuals – is insufficient to withstand summary judgment. *See, e.g.*, *Mills v. Seitz*, 1987 WL 19025, at *1 (S.D.N.Y. Oct. 21, 1987) ("Conclusory allegations . . . without supporting facts or specific dates cannot sustain a claim for relief under 42 U.S.C. § 1983.").

[4] The first direct reference to the use of force dating to October or November 2015 appears to be contained in grievances filed on January 5, 2016. Debyah Decl. at ¶¶ 19-20.

Regarding the claim against the Hearing Officer, it is evident on the Motion that Plaintiff did not appeal his disciplinary decision through any of the steps of the available process. Venettozzi Decl. at ¶¶ 3-4; *see also* Pl.'s Resp. at pp. 18-19 (discussing merits of disciplinary determination, but not asserting that an administrative appeal was filed). Therefore, Plaintiff did not exhaust his due process claim against Hearing Officer Zerniak. *Thomas v. Kinderman*, 2017 WL 8293605, at \*6-7, *report and recommendation adopted*, 2018 WL 1441336 (N.D.N.Y. Mar. 22, 2018).

### 3. Whether Plaintiff's Failure to Exhaust Was Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Plaintiff did not demonstrate either that the DOCCS grievance program operates as a dead end or is "so opaque that it becomes, practically speaking, incapable of use." *Id.* Plaintiff appears to have had no difficulty in previously navigating the three step

grievance process when he filed and appealed, both to the Superintendent and to CORC, a grievance regarding an April 2015 use of force incident. *See* Dkt. No. 64, May 21, 2018 Decision and Order, p. 6. The record also amply demonstrates that Plaintiff has extensive experience with the DOCCS grievance system. *See*, *e.g.*, Seguin Decl. at Ex. A (identifying dozens of fully exhausted grievances filed by Plaintiff in years 2015 and 2016 and dozens more from earlier years).

> This shows that Plaintiff did not view the filing of grievances as a dead end. It also demonstrates that he clearly understood DOCCS' inmate grievance policy and could navigate it when he wished to pursue a grievance. As such, the first two exceptions identified under *Ross* are not applicable here.

*Walker v. Ball*, 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1406632 (N.D.N.Y. Mar. 20, 2018); *see also Gonzalez v. Coburn*, 2017 WL 6512859, at *6 (W.D.N.Y. Dec. 20, 2017) ("Plaintiff's decision to affirmatively participate at all three levels in the inmate grievance program demonstrates that the program was neither a dead-end nor so opaque that Plaintiff could not avail himself of it."). Plaintiff makes no suggestion in his papers that the third exception, involving conduct by prison officials to thwart inmates from taking advantage of the grievance process, is applicable here either and given the fact that Plaintiff filed numerous grievances during the relevant time period, including thirty-five in the period from December 2015 through February 2016, the record would not support such a claim.

Accordingly, the Court finds that Plaintiff has not established an issue of material fact as to the availability of administrative remedies. The Court therefore recommends

that Defendants' Motion be granted as to Plaintiff's claims regarding denial of meals, excessive force, and due process based upon Plaintiff's failure to exhaust.

## B. Eighth Amendment - Medical Indifference

### 1. Standard

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y. 1992), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (quoting *Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's

daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong of the Eighth Amendment analysis is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66.  A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836.  This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835).  Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, *i.e.*, an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin* ("*Hathaway II*"), 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

### 2.  Analysis

Plaintiff claims that Dr. Kumar was deliberately indifferent to his serious medical needs by being dismissive of his requests for treatment and for stronger pain medication for his herpes condition and for his thyroid issues.  *See* Am. Compl.; Pl.'s Resp. Defendants argue that Dr. Kumar was not deliberately indifferent to Plaintiff's medical needs, that he treated Plaintiff according to his professional judgment and, in fact, that

Plaintiff was not suffering from either thyroid cancer or herpes.  Defs.' Mem. of Law at pp. 28-34.  For the reasons that follow, I recommend that Defendants' Motion for Summary Judgment as to this claim be granted.

### a.  Res Judicata/Collateral Estoppel

The doctrine of *res judic*ata, or claim preclusion, provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994).  "To prove the affirmative defense a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citing *Allen v. McCurry*, 449 U.S. at 94; *Burgos v. Hopkins*, 14 F.3d at 789; *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345-46 (2d Cir. 1995)).

Collateral estoppel requires four elements: "(1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been 'full and fair opportunity' for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995).

The issue of Dr. Kumar's treatment of Plaintiff has already received judicial review, and the result of that analysis was not favorable to Plaintiff. In particular,

Magistrate Judge Thèrése Dancks, in a Report-Recommendation that was adopted in whole, dealt specifically with Plaintiff's claim that Dr. Kumar ignored Plaintiff's herpes condition, as well as his claimed thyroid cancer.  Judge Dancks offered the following detailed analysis:

> As with the medical personnel who saw Plaintiff from 1994 through 2003, the only support for Plaintiff's claim he has thyroid cancer is his own conclusory assertion, which is inadequate to make a plausible showing. Plaintiff acknowledges in his complaint that Dr. [Kumar] reviewed his medical records, oversaw Plaintiff's blood work, discussed the results with another provider, and told Plaintiff his blood work was normal. (Dkt. No. 1 at ¶¶ 28-30.) Moreover, Plaintiff's June 10, 2016, grievance indicates confusion on his part regarding the difference between having a thyroid and having thyroid cancer. *Id.* Because Plaintiff has made no plausible showing he has thyroid cancer, and Dr. [Kumar] had blood work and other laboratory tests done which showed normal results, the Court finds Plaintiff has also failed to make a plausible showing that Dr. [Kumar] acted with deliberate indifference with regard to Plaintiff's claimed thyroid cancer.
>
> Plaintiff has alleged in his complaint that he made Dr. [Kumar] aware that he had herpes in May of 2016, and his July 27, 2016, grievance supports the doctor's awareness Plaintiff had the condition. (Dkt. Nos. 1 at ¶ 27; 1-1 at 10.) However, neither Plaintiff's complaint nor the medical and grievance records annexed to his complaint show that Dr. [Kumar] saw Plaintiff when he was suffering a herpes outbreak, and the Court has found that asymptomatic herpes does not constitute a serious medical condition for purposes of an Eighth Amendment medical indifference claim. Plaintiff acknowledges in his July 27, 2016, grievance that Dr. [Kumar] told him he would give Plaintiff medication if he had a herpes outbreak. (Dkt. No. 1-1 at 10.) However, it is clear from the grievance that Plaintiff wanted medication he could take all the time to prevent an outbreak from occurring. *Id.* The law is well-settled that disagreement with the type of medical care provided is insufficient to state a constitutional claim, and that the test is one of medical necessity. *Dean v. Coughlin*, 804 F. 2d 207, 215 (2d Cir. 1986).
>
> Because of the foregoing, the Court finds that Plaintiff has failed to state an Eighth Amendment claim for medical indifference against Dr. [Kumar] and recommends dismissal of the complaint against him. The Court also finds

that giving Plaintiff an opportunity to amend his complaint would be futile and, therefore, recommends the dismissal be with prejudice.

*Reeder v. Robinson*, 2018 WL 3121633, at *9-10 (N.D.N.Y. Jan. 24, 2018), *report and recommendation adopted sub nom. Reeder v. Young*, 2018 WL 1468655 (N.D.N.Y. Mar. 26, 2018).

The Court concludes that all the elements for the application of *res judicata* and collateral estoppel have been met.  Both the issue and the claim against Dr. Kumar have previously been litigated by Plaintiff, without any success.  Plaintiff's attempted serial presentation of the same claim is therefore barred by the foregoing equitable doctrines. While Defendants did not raise the issue of collateral estoppel or *res judicata* as an affirmative defense in their Answer, Dkt. No. 85, Defendants are not deemed to have waived such an affirmative defense so long as it is raised and considered at the pretrial stage and Plaintiff is given an opportunity, as he was here, to rebut the defense. *Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993) ("Dismissal of appellant's recycled claims was not only appropriate but virtually mandatory in this case, whether or not the appellees raised *res judicata* in their answer."); *Carino v. Town of Deerfield (Oneida Cty., N.Y.)*, 750 F. Supp. 1156, 1162 n. 9 (N.D.N.Y. 1990), *aff'd sub nom. Carino v. Town of Deerfield*, 940 F.2d 649 (2d Cir. 1991).  Even in circumstances where the Second Circuit has used a more restrictive approach regarding waiver, it has still noted that a district court is free to raise that defense *sua sponte*.  *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 398 (2d Cir. 2003).

### b. *Alternative Analysis*

In the event that the District Court believes that issue and claim preclusion is not applicable to this case, or has been waived, the Court would recommend granting Defendant Kumar's Motion for Summary Judgment for the same reasons articulated by Magistrate Judge Dancks and adopted by District Court Judge Suddaby. There is no credible evidence that Plaintiff suffers from thyroid cancer. There is also no admissible evidence that Plaintiff suffers from symptomatic *or* asymptomatic herpes other than Plaintiff's self-serving claims, and indeed the medical records and physical examinations performed on Plaintiff establish the opposite. *See* Kumar Decl., *generally*. Further, asymptomatic herpes is not a serious medical condition for purposes of the Eighth Amendment. *Reeder v. Robinson*, 2018 WL 3121633, at *7. Finally, Plaintiff has failed to raise any question of fact with regard to the improper motivation of Dr. Kumar.

### C. Eighth Amendment – Denial of Recreation

Plaintiff alleges that his Eighth Amendment rights were violated by the alleged denial of recreation time on twenty-four different occasions in the years 2015 and 2016. Am. Compl. at p. 11.[5] Defendants seek summary judgment on this claim on the ground that Plaintiff's voluntary decision to forego recreation cannot give rise to an Eighth Amendment claim and that the Defendants to this claim had no role in denying Plaintiff recreation time. Defs.' Mem. of Law at pp. 27-28.

---

[5] While Plaintiff's submissions to the Court elsewhere make broad statements that he was denied recreation for two or three years, *see* Am. Compl. at p. 12; Pl.'s Resp. at p. 12, these claims are wholly conclusory and the Court addresses only the claim as it relates to the specific dates identified by Plaintiff.

Defendants' submission explains the procedure by which inmates at Upstate are afforded the opportunity to leave their cells for recreation. Fletcher Decl. at ¶¶ 29-38. Specifically, the record establishes that a corrections officer presses a control button which unlocks the door to the inmate's recreation area and that when this is done a buzzer sounds advising the inmate to pull open the unlocked door to proceed out of his cell. *Id.* at ¶¶ 37-38. If the inmate chooses not to open the door it relocks, preventing the inmate from going for recreation. *Id.* at ¶ 37. Defendants argue that given this procedure, any decision by Plaintiff not to open the door cannot form the basis for a constitutional claim. Defs.' Mem. of Law at p. 28. Plaintiff, however, disputes Defendants' submissions regarding this procedure. He asserts that cell doors are sometimes broken and appears to dispute Fletcher's explanation of how the door to the recreation pen works. *See* Pl.'s Resp. at p. 12. He also specifically states that officers simply did not let him out of his cell on certain occasions although he was following the designated procedure to request recreation. *Id.* These disputes raise factual questions that cannot be resolved in Defendants' favor on summary judgment.

Defendants alternatively argue that none of the individuals identified as Defendants regarding this claim were personally involved in a failure to provide recreation and thus should be dismissed. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). As noted above, Plaintiff's denial of recreation claim is made against Defendants Locke, Fletcher, Smith, Satamore, and

Rodier.  Dkt. No. 64 at p. 24.  Each Defendant has offered a sworn declaration that he never denied Plaintiff recreation during 2015 or 2016.  Defendants Fletcher, Smith, Santamore, and Rodier were Sergeants at Upstate at the time at issue and all aver that their job duties did not involve opening and closing cell doors for inmates for purposes of permitting inmates to go to recreation.  Fletcher Decl. at ¶ 39; Dkt. No. 124-7, Smith Decl., ¶ 10; Dkt. No. 124-16, Santamore Decl., ¶¶ 11-12; Dkt. No. 124-27, Rodier Decl., ¶ 10.  Defendant Locke's Declaration states that as a corrections officer, his duties did include unlocking cell doors at recreation time, but specifically states that he never intentionally refused to permit Plaintiff to exit his cell for recreation.  Dkt. No. 124-21, Locke Decl., ¶¶ 13-14.  As noted, Plaintiff did not respond to Defendants' Statement of Material Facts.  His opposition to summary judgment, while taking exception to the procedures for inmate recreation and advocating for new policies, does not specifically challenge the factual assertions of these Defendants that they did not deny Plaintiff recreation.  Pl.'s Resp. at pp. 10-14.  Those facts are thus uncontroverted on the record before the Court and summary judgment is, therefore, appropriate as to these Defendants based on Plaintiff's failure to establish that they were personally involved in any alleged denial of recreation.

## V. CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 124) be **GRANTED** and that Plaintiff's Amended Complaint be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[6] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Dated:    September 10, 2019
          Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).